**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Nina Y. Wang**

Civil Action No. 23-cv-03104-NYW-KAS

ANDUIN LIGHTNER, individually and on behalf of all others similarly situated,

Plaintiff,

v.

DAVITA, INC.,

Defendant.

---

# ORDER ON MOTION FOR CONDITIONAL COLLECTIVE CERTIFICATION

---

This matter is before the Court on Plaintiff's Opposed Amended Motion for FLSA Conditional Certification and Court-Authorized Notice (the "Motion" or "Motion for Conditional Certification"). [Doc. 72]. The Court has reviewed the Motion, the related briefing, and applicable case law, and concludes that oral argument would not materially assist in resolution of the Motion. For the reasons set forth in this Order, the Motion for Conditional Certification is respectfully **DENIED**.

## BACKGROUND

Plaintiff Anduin Lightner ("Plaintiff" or "Ms. Lightner") initiated this collective action on November 21, 2023 pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219. [Doc. 1]. Plaintiff alleges generally that Defendant DaVita, Inc. ("Defendant" or "DaVita"), a "nationwide healthcare provider," failed to provide bona fide meal breaks to its employees and failed to compensate its employees for compensable, off-the-clock rest breaks. [*Id.* at ¶ 1]. More specifically, Ms. Lightner alleges that DaVita nurses and

technicians are regularly required to "remain responsible for patient care" during their meal breaks, so their meal breaks are frequently interrupted "by work demands." [*Id.* at ¶ 2]. Despite this, Plaintiff alleges, DaVita deducts 30 minutes from the employees' six-hour shifts, which deprives the nurses and technicians of compensation for time they worked during their interrupted meal breaks. [*Id.* at ¶¶ 2–3]; *see also* [*id.* at ¶ 22 ("Plaintiff and the class members were not compensated at any rate whatsoever for thirty minutes of each of their six-hour shifts worked [even though] Plaintiff and the Collective Action members had meal breaks that were routinely interrupted or subject to interruption to perform job duties.")]. She alleges that this practice also resulted in DaVita depriving nurses and technicians of overtime pay during weeks in which they worked more than 40 hours. [*Id.* at ¶ 22].

In addition to meal-break violations, Ms. Lightner alleges that DaVita nurses and technicians were and/or are required to clock out for rest breaks of fewer than 20 minutes, which deprives them of compensation for those breaks and violates the FLSA. [*Id.* at ¶¶ 4, 31–33]; *see also* 29 C.F.R. § 785.18 ("Rest periods of short duration, running from 5 minutes to about 20 minutes, . . . must be counted as hours worked."). Plaintiff suggests that this sometimes occurred when an employee's break "was intended to serve as a meal break[] but was cut short due to an interruption," [Doc. 1 at ¶ 22], but she also suggests more generally that employees were required to clock out for rest periods shorter than 20 minutes and deprived of compensation for that time, *see* [*id.* at ¶¶ 1, 4]. She asserts that this practice "had the effect of depriving nurses and technicians of overtime compensation due to them under the FLSA in the weeks in which they worked more than forty (40) hours in a workweek." [*Id.* at ¶¶ 4, 33].

Ms. Lightner raises a single claim in this case, asserting a violation of 29 U.S.C. § 207 based on DaVita's alleged failure to pay proper overtime wages. [*Id.* at ¶¶ 36–43]. She brings her claim personally and on behalf of the following collective:

> All current and former hourly paid nurses and technicians employed at all DaVita locations excluding those in Arkansas, Florida, Georgia, Louisiana, New York, Oklahoma, Tennessee, Texas, and Virginia, to provide direct patient care at any time during the three years before this Complaint was filed up to the present who, as a result of Defendant's practice of not paying for rest breaks 20 minutes or shorter in duration, did not receive all of the overtime pay to which they were entitled under the FLSA in the weeks of their employment in which said nurses and technicians worked more than forty (40) hours per week[.]

[*Id.* at ¶ 44 (the "Proposed Collective")].[1]

On March 7, 2024, the Honorable Kathryn A. Starnella entered a Scheduling Order, which contemplates three phases of discovery. [Doc. 33 at 6]. In the first phase, the Parties "focus[ed] on the Named Plaintiff[] and opt-in plaintiffs and the discovery necessary for conditional certification of the FLSA collective action." [*Id.*]. The first phase of discovery closed on January 31, 2025. [Doc. 61].

Plaintiff filed the Motion for Conditional Certification on March 3, 2025. [Doc. 72]. On August 21, 2025, DaVita moved to strike all of Plaintiff's consent forms on the basis that Plaintiff's counsel obtained the consent forms through false and misleading communications. [Doc. 104]. This Court agreed that Plaintiff's counsel's communications

---

[1] The Complaint also asserts a claim on behalf of an "FLSA Meal Break" collective based on DaVita's alleged "practice of deducting 30 minutes from each shift worked and not paying for same." *See* [Doc. 1 at ¶ 44]. However, on August 5, 2026, Plaintiff filed a Notice of Withdrawal of FLSA Meal Break Claim for Conditional Certification Purposes Only, wherein she "withdraw[s] her request to conditionally certify a[n] FLSA meal break collective without prejudice." [Doc. 155 at 2]. Accordingly, the Court construes the Motion for Conditional Certification as seeking conditional certification only of the "FLSA Rest Break" collective referenced in the Complaint. [Doc. 1 at ¶ 44].

were false and misleading and determined that corrective action—curative notice sent to all individuals who had jointed the case—was necessary before it could rule on the Motion for Conditional Certification. [Doc. 135 at 2–4]. Accordingly, the Court ordered the Parties to meet and confer about the contents of the curative notice and the process for its distribution. [*Id.* at 4]. The Parties did so, *see* [Doc. 137], and the Court approved the Parties' proposed curative notice and proposed corrected consent form, [Doc. 138]. Plaintiff's counsel distributed the curative notice to the individuals who had opted in, *see* [Doc. 139], and approximately half of the original opt-ins filed corrected consent forms, *see* [Doc. 142 at 2].

The Motion for Conditional Certification is fully briefed, [Doc. 73; Doc. 77], and ripe for resolution.[2]

## LEGAL STANDARD

The FLSA sets forth standards governing the payment of minimum and overtime wages to employees. 29 U.S.C. §§ 206, 207. Section 216(b) permits private individuals to challenge minimum wage and overtime pay violations by bringing claims on "behalf of . . . themselves and other employees similarly situated." 29 U.S.C. § 216(b). This sort of collective action allows "plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165,

[2] On August 17, 2026, DaVita filed a "Response" to Plaintiff's Notice of Withdrawal of FLSA Meal Break Claim for Conditional Certification Purposes Only. *See* [Doc. 156]. Plaintiff's Notice of Withdrawal did not create a right for DaVita to file a 15-page response containing substantive legal arguments that could have been raised in its original Response to the Motion for Conditional Certification, and DaVita did not ask for leave of Court prior to filing this document. The Court did not consider Defendant's new arguments in ruling on the Motion for Conditional Certification.

170 (1989) (interpreting the Age Discrimination in Employment Act, which explicitly incorporates the collective action provisions of the FLSA).

FLSA collective actions may be maintained "only by and among employees who are 'similarly situated.'" *Norwood v. WBS, Inc.*, No. 15-cv-00622-MSK-KMT, 2016 WL 7666525, at *1 (D. Colo. Sept. 29, 2016). "The trial court is tasked with determining who is 'similarly situated' for purposes of a § 216(b) claim in a 'manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure.'" *Pena v. Home Care of Denv., LLC*, No. 19-cv-00069-CMA-NYW, 2019 WL 5577947, at *1 (D. Colo. Oct. 29, 2019) (quoting *Hoffmann-La Roche*, 493 U.S. at 170–72).

The Tenth Circuit has authorized a two-step process for determining whether putative collective action members are similarly situated. *Thiessen v. Gen. Elec. Cap. Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001). At the initial "notice stage" of litigation, to assess whether the putative plaintiffs are similarly situated, the court determines whether the plaintiff has asserted "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Id.* at 1102 (quoting *Vaszlavik v. Storage Tech. Corp.*, 175 F.R.D. 672, 678 (D. Colo. 1997)). "Certification at this step is conditional, and the standard of proof 'is a lenient one that typically results in . . . certification,' allowing notice to be sent to the putative class members and discovery to be undertaken." *Norwood*, 2016 WL 7666525, at *1 (quoting *Brown v. Money Tree Mortg., Inc.*, 222 F.R.D. 676, 679 (D. Kan. 2004)); *see also Dunkel v. Warrior Energy Servs., Inc.*, 304 F.R.D. 193, 199 (W.D. Pa. 2014) ("A plaintiff's burden at the first [stage] is light, requiring only that the plaintiff make a modest factual showing by 'producing some

evidence, beyond pure speculation, of a factual nexus between the manner in which the employer's alleged policy affected her and the manner in which it affected other employees.'" (cleaned up)). But importantly, conditional certification is "not automatic." *Jung v. Gina Grp., LLC*, No. 19-cv-08624-MKV, 2021 WL 4120642, at *2 (S.D.N.Y. Sept. 9, 2021) (quotation omitted).

Courts generally "limit[] the scope of their review on a motion for conditional certification to the allegations in plaintiffs' complaint and supporting affidavits." *Shockey v. Huhtamaki, Inc.*, 730 F. Supp. 2d 1298, 1303 (D. Kan. 2010); *accord MacDonald v. Covenant Testing Techs., LLC*, No. 18-cv-02290-NRN, 2019 WL 1755282, at *3 (D. Colo. Apr. 18, 2019). Courts can, however, also consider other evidence obtained through early discovery. *See Thiessen*, 267 F.3d at 1108; *James v. Boyd Gaming Corp.*, 522 F. Supp. 3d 892, 912 (D. Kan. 2021) (considering deposition testimony and interrogatory answers at conditional-certification step); *Gomez v. Epic Landscape Prods., L.C.*, No. 2:22-cv-02198-JAR-ADM, 2023 WL 3159604, at *3 (D. Kan. Apr. 28, 2023) ("[T]he Court considers the allegations in Plaintiffs' Amended Complaint and the instant motion, as well as the documentation attached thereto, to determine if there are substantial allegations that the putative class members were together the victims of a single decision, policy, or plan to not pay overtime premiums."). The Court does not weigh evidence, resolve factual disputes, or reach the merits of the case at the conditional-certification stage. *MacDonald*, 2019 WL 1755282, at *3.

## ANALYSIS

### I. Defining the Proposed Collective

In the Motion for Conditional Certification, Ms. Lightner asks the Court to conditionally certify the "following collective as it relates to FLSA . . . rest breaks for the three years prior to the filing of this lawsuit and forward":

> All current and former hourly-paid nurses and technicians employed at any DaVita location, excluding those in Arkansas, Florida, Georgia, Louisiana, New York, Oklahoma, Tennessee, Texas, and Virginia, who provide(d) direct patient care.

[Doc. 72 at 15 (footnote omitted)]. Without citation to legal authority, DaVita responds that Plaintiff "does not identify the collective[] she seeks to certify," so "she is beholden to the one propounded in the Complaint." [Doc. 73 at 1–2]. Plaintiff does not respond to DaVita's argument or clarify the collective she wants to conditionally certify. *See* [Doc. 77].

DaVita's argument is not entirely accurate—Plaintiff *does* identify the collective she seeks to certify; it just differs from the Proposed Collective she identified in the Complaint. *Compare* [Doc. 1 at ¶ 44], *with* [Doc. 72 at 15]. But the Court does not find the Proposed Collective identified in the Complaint materially different from the collective identified in the Motion as it relates to rest breaks 20 minutes or shorter. Because it is more specific, the Court will rely on the proposed collective identified in the Complaint:

> All current and former hourly paid nurses and technicians employed at all DaVita locations excluding those in Arkansas, Florida, Georgia, Louisiana, New York, Oklahoma, Tennessee, Texas, and Virginia, to provide direct patient care at any time during the three years before this Complaint was filed up to the present who, as a result of Defendant's practice of not paying for rest breaks 20 minutes or shorter in duration, did not receive all of the overtime pay to which they were entitled under the FLSA in the weeks of their employment in which said nurses and technicians worked more than forty (40) hours per week[.]

[*Id.* at ¶ 44].[3]

## II. Whether the Proposed Collective Members are Similarly Situated

The Court must determine whether Ms. Lightner has raised substantial allegations that the Proposed Collective members are similarly situated. *Thiessen*, 267 F.3d at 1105.

As a preliminary matter, Plaintiff's rest-break FLSA claim depends at least in part on allegations that DaVita interrupted employees' 30-minute unpaid *meal* breaks. *See* [Doc. 72 at 5 ("[R]egardless of whether attributable to meal breaks cut short by an interruption or for other reasons, Defendant's records clearly show impermissible deductions for breaks of fewer than twenty minutes.")]; *see also* [*id.* at 13 ("Regardless whether this short break was intended to serve as a meal break, but was cut short due to

[3] On May 20, 2026, the Parties filed a joint status report at the Court's directive identifying the individuals who filed corrected consent forms. *See* [Doc. 142]. Sixty-two people originally filed consent-to-join forms, and of those 62, 27 previous opt-ins filed corrected consent forms. [*Id.* at 2]. In addition, two people who submitted corrected consent forms had not originally joined the lawsuit. [*Id.*]. The Parties take competing positions on whether the Court can consider deposition testimony from individuals who originally joined the lawsuit but did not file corrected consent forms. *See* [*id.* at 2–4]. Ultimately, the Court concludes that whether or not it considers the testimony of individuals who originally joined this case but did not file corrected consent forms, the Court's resolution of the Motion for Conditional Certification remains the same.

Aside from identifying the current opt-ins, as ordered by the Court, both Parties raise procedurally improper arguments in their status report. For example, DaVita argues that "[t]hree of those who filed corrected consents to join have time-barred claims and thus should also be disregarded." [*Id.* at 3]. Ms. Lightner, on the other hand, references two additional potential opt-ins "whose consents have been received but have yet to be filed," and she seeks "leave to file these consents late." [*Id.* at 3–4]. Plaintiff also "asks for leave to file consents expected this week and next week, but which have not yet been received, as there is no prejudice to Defendant in accepting these forms, and they will still be received in time for the Court's consideration of the pending motion." [*Id.* at 4]. No Party has filed any formal motion requesting affirmative relief, and their requests for relief raised in the status report are procedurally improper and will be disregarded. *See* NYW Civ. Practice Standard 7.1A(a)(5) ("All requests for the Court to take distinct actions must be contained in separate, written *motions*." (emphasis added)).

an interruption, such short breaks are compensable under the FLSA.")]; *see also* [Doc. 77 at 4–5 (Plaintiff arguing that she has identified a "single policy and practice" that DaVita "require[es] (and expect[s]) direct patient care workers to remain on-duty during unpaid meal periods and subject[s] these workers to interruptions throughout their attempted meal periods" (capitalization altered and emphasis omitted))]. Therefore, although Plaintiff has "withdraw[n] . . . her request to conditionally certify a[n] FLSA meal break collective without prejudice," [Doc. 155 at 2], the Court will still consider meal-break-related allegations and evidence in determining whether the Proposed Collective Members are similarly situated.[4]

Ms. Lightner argues that the Proposed Collective Members are similarly situated because "they were all classified as non-exempt, overtime eligible employees; paid on an hourly basis (even with the same . . . time tracking software); and subject to the same meal and rest break policies." [Doc. 72 at 5–6 (footnotes omitted)]. The Court's focus here, however, is whether Plaintiff has put forth substantial allegations that the Proposed Collective Members were subject to a single decision, policy, or plan. *Thiessen*, 267 F.3d at 1102; *see also Colson v. Avnet, Inc.*, 687 F. Supp. 2d 914, 927 (D. Ariz. 2010) (allegations that employees were all classified as exempt and performed the same tasks were by themselves insufficient to justify conditional certification because they did not "constitute the necessary evidence of a common policy, plan, or practice"); *Barron v. Henry Cnty. Sch. Sys.*, 242 F. Supp. 2d 1096, 1103 (M.D. Ala. 2003) ("[A] plaintiff must make some rudimentary showing of commonality between the basis for his claims and

[4] The Court does not consider the deposition testimony of Tennessee worker Rosalind Rodgers, since Tennessee is one of nine states carved out of the Proposed Collective. *See* [Doc. 1 at ¶ 44; Doc. 65-24 at 2].

that of the potential claims of the proposed class, beyond the mere facts of job duties and pay provisions.").

In her Complaint, Plaintiff alleges:

- "[O]n numerous instances Plaintiff and Collective Action members were required to clock out for a rest break period of less than 20 minutes in duration, which time period went uncompensated. This had the effect of depriving nurses and technicians of overtime compensation due to them under the FLSA in the weeks in which they worked more than forty (40) hours in a workweek in violation of the FLSA. On information and belief, all of DaVita's non-exempt, hourly paid direct patient care nurses and technicians were subjected to this illegal pay practice." [Doc. 1 at ¶ 4].

- "[O]n numerous instances Plaintiff and Collective Action members were required to clock out for a rest break period of less than 20 minutes in duration without compensation. Regardless of whether this short break was intended to serve as a meal break, but was cut short due to an interruption, such short breaks are compensable time under the FLSA." [*Id.* at ¶ 22].

- "On numerous instances Plaintiff and Collective Action members were denied compensation for rest break periods of less than 20 minutes in duration. This had the effect of depriving nurses and technicians of overtime compensation due to them under the FLSA in the weeks in which they worked more than forty (40) hours in a week." [*Id.* at ¶ 33].

- "[B]ased on information and belief, Defendant's pay and time records will show many instances when Plaintiff and Collective Action Members were required to clock out for uncompensated rest break of less than 20 minutes in duration." [*Id.* at ¶ 35].

These allegations provide little information about or insight into DaVita's alleged 41-state "practice of not paying for rest breaks 20 minutes or shorter in duration." *See* [*id.* at ¶ 44]. For example, there are no allegations establishing how such an informal practice was implemented or how often the practice deprived employees of rest-break compensation they were owed. And there are no allegations as to which, or all, of DaVita's facilities were involved. "Courts have found that such conclusory allegations are not 'substantial allegations' and therefore are insufficient" to support conditional certification. *Smith v.*

*Mini Mart, Inc.*, No. 17-cv-00671-PAB-MEH, 2018 WL 10932965, at *6 (D. Colo. Mar. 26, 2018) (collecting cases); *see also Islam v. LX Ave. Bagels, Inc.*, No. 18-cv-04895-RA-RWL, 2019 WL 5198667, at *6 (S.D.N.Y. Sept. 30, 2019) ("[C]ourts have denied conditional certification where plaintiffs submitted threadbare, overly conclusory allegations of similarly situated employees." (collecting cases)).

The Motion for Conditional Certification, which focuses heavily on the now-withdrawn request to conditionally certify a meal-break collective, does little more to establish a companywide practice with respect to unpaid rest breaks. Ms. Lightner asserts that DaVita "subjected [Proposed Collective Members] to an identical policy and practice with respect to meal and rest breaks, which was implemented identically (and illegally) at all locations." [Doc. 72 at 3]. She argues that DaVita "does not pay for the time employees are clocked out as a meal period without compensation for the time worked, even when breaks are 20 minutes or less," [*id.* at 10–11], that its records "clearly show impermissible deductions for breaks of fewer than twenty minutes," [*id.* at 5], and that its records "show that it illegally failed to compensate for short breaks of fewer than twenty minutes in violation of the FLSA," [*id.* at 14]. She also claims that the Proposed Collective Members were, "on occasions," "required to clock back in[] prior to taking a full 30-minute meal break because it was cut short by an interruption, or for other reasons immaterial to the merits of their meal break claims." [*Id.* at 13]. For each of these assertions, she cites a single employee's time records reflecting a 19-minute break, which Plaintiff implies was uncompensated. *See* [*id.* at 5 n.13, 11 n.26, 13 n.35, 14 n.37]; *see also* [Doc. 65-18 at 2]. However, time records from a single employee—who did not file

a corrected consent form[5]—do little to establish a companywide practice, across 41 states, of failing to compensate employees for short rest breaks.

Although Plaintiff has attached hundreds of pages of deposition testimony and other evidence to her Motion for Conditional Certification, *see, e.g.*, [Doc. 65-1; Doc. 65-2; Doc. 65-3; Doc. 65-4; Doc. 65-5; Doc. 65-8; Doc. 70-2; Doc. 70-4; Doc. 70-5], she does not cite any of this evidence in support of her claim that DaVita had a practice of not paying for rest breaks 20 minutes or shorter in duration, *see* [Doc. 72 at 13–14]. It is not this Court's duty to sift through this evidence in search of support for Plaintiff's Motion. *Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1546 (10th Cir. 1995). But as explained above, because Plaintiff's rest-break claim is based at least in part on would-be meal breaks that were cut short, *see* [Doc. 72 at 5, 13], the Court has, in an abundance of caution, reviewed the deposition testimony cited by Plaintiff in support of her arguments that the Proposed Collective Members' meal breaks were interrupted, *see* [*id.* at 4 & n.11; *id.* at 8 n.22].

Testimony that employees' meal breaks were interrupted, *see, e.g.*, [Doc. 65-1 at 151:9–15; Doc. 65-2 at 65:12–66:4; Doc. 65-5 at 94:2–18], does not necessarily provide clear support for Plaintiff's claim that, based on a companywide policy, all Proposed Collective Members were deprived of pay for compensable rest breaks. For example, many employees testified that their meal breaks were often interrupted, but the cited testimony does not necessarily reflect that, because of these interruptions, the employees started working again within 20 minutes of starting their break (rendering those breaks

[5] This employee, Ileshia Hogan, filed a consent form at the early stages of this case, *see* [Doc. 5-1 at 6], but she did not file a corrected consent form, *see* [Doc. 142 at 2]. Furthermore, the state(s) in which Ms. Hogan worked is not evident. *See* [Doc. 65-18].

compensable). *See, e.g.*, [Doc. 65-2 at 65:12–66:22 (technician stating that he was frequently interrupted by "small inconveniences," but not indicating whether the interruptions resulted in unpaid breaks of fewer than 20 minutes); Doc. 65-11 at 34:17–25, 158:11–159:16 (technician stating that she would be on a break and "would get called back," but not indicating whether she clocked back in or how quickly into her break she would be called back); Doc. 65-12 at 94:13–95:22 (technician stating that her breaks were interrupted, but not discussing the length of the breaks or clocking back in); Doc. 70-2 at 35:21–24, 36:18–37:8 (nurse stating that she "sometimes" finished her meal when her meal breaks were interrupted, but also stating she did not think nurses clocked out for meal breaks)]; *see also* [Doc. 77 at 5 (Plaintiff describing the FLSA violation as occurring when an employee "clock[s] back in from an attempted meal or rest break lasting between 5 and 20 minutes [but] receive[s] no compensation for that time")]. At best, one employee stated that she would clock out for her meal break, and after five to ten minutes, her break would be interrupted and she would have to clock back in and resume work. [Doc. 70-5 at 20:4–17].

The Court considers Plaintiff's allegations in conjunction with the evidence Plaintiff proffers in support of her Motion—(1) the time records of one employee, who has not filed a corrected consent form and who worked in an unidentified state, showing that they took a 19-minute break, which Plaintiff claims was uncompensated, [Doc. 65-18]; and (2) one South Carolina employee's testimony that she had to clock out for breaks lasting only five or ten minutes, [Doc. 70-5 at 20:4–17]. The Court respectfully concludes that Plaintiff has not set forth "substantial allegations" that the Proposed Collective Members "were together the victims of a single decision, policy, or plan." *Thiessen*, 267 F.3d at 1102.

The minimal evidence submitted by Plaintiff does not establish the DaVita practice contemplated in Plaintiff's Complaint in any one state, let alone a common informal policy implemented across 41 states. *See Jibowu v. Target Corp.*, 492 F. Supp. 3d 87, 125 (E.D.N.Y. 2020) (affidavits from eight employees were insufficient to show that they were similarly situated to 14,000 potential collective members); *see also Burns v. City of Holyoke*, 881 F. Supp. 2d 232, 235 (D. Mass. 2012) (declining to conditionally certify a collective "based on the affidavits of a few employees"); *Flores v. Lifeway Foods, Inc.*, 289 F. Supp. 2d 1042, 1046 (N.D. Ill. 2003) (evidence that two of 50 employees were deprived of overtime wages did not amount to "modest factual showing of a common policy or plan" (quotation omitted)).

Although Plaintiff's burden at this conditional stage is "modest, it is not non-existent, and it cannot be satisfied simply by unsupported assertions." *Ward v. Express Messenger Sys., Inc.*, No. 17-cv-02005-NYW, 2018 WL 1604622, at *3 (D. Colo. Apr. 3, 2018) (quoting *Korenblum v. Citigroup, Inc.*, 195 F. Supp. 3d 475, 480 (S.D.N.Y. 2016)); *see also Dunkel*, 304 F.R.D. at 199 (requiring a "modest factual showing" at first stage of certification process). There is simply no basis for this Court to conclude that Plaintiff has raised "substantial allegations" that the Proposed Collective Members are similarly situated or all subject to a single decision, policy, or plan, since there is no clear indication that the Proposed Collective Members were required to clock back in within the first 20 minutes of their meal breaks and were deprived compensation for that time (or were otherwise denied pay for breaks shorter than 20 minutes).[6] In other words, conditional

[6] The lack of support for Plaintiff's cursory allegations distinguishes this case from the Court's decision in *Bowling v. DaVita*, where the Court conditionally certified a meal-break collective covering nine states. *See* No. 21-cv-03033-NYW-KLM, 2023 WL 4364140, at *6 (D. Colo. July 6, 2023) (conditionally certifying collective after concluding that the

certification of the Proposed Collective on the current record would require the Court to assume the existence of evidence that is absent from the record. The Court respectfully concludes that Plaintiff has not met her burden at this stage and declines to conditionally certify the Proposed Collective. In so ruling, the Court makes no determination on the merits of Plaintiff's individual claim or whether DaVita has violated the FLSA.

For the reasons set forth in this Order, the Motion for Conditional Certification is respectfully **DENIED**. On or before **September 4, 2026**, the Parties shall meet and confer and submit a joint status report concerning the appropriate next steps in this case.

**CONCLUSION**

For these reasons, it is **ORDERED** that:

(1) Plaintiff's Opposed Amended Motion for FLSA Conditional Certification and Court-Authorized Notice [Doc. 72] is **DENIED**;

(2) Defendant DaVita Inc.'s Opposed Motion to Decide DaVita's Motion to Decertify in *Bowling v. DaVita Inc.* Before Deciding Plaintiff's Amended Motion for FLSA Conditional Certification or, in the Alternative, for a Hearing [Doc. 147] is **DENIED as moot**;

(3) DaVita Inc.'s Conditional Motion Requesting New Conditional Certification Briefing [Doc. 157] is **DENIED as moot**; and

---

plaintiff had raised substantial allegations that employees in certain states were subject to the same decision, policy, or plan).

(4) On or before **September 4, 2026**, the Parties shall meet and confer and submit a joint status report concerning the appropriate next steps in this case.

DATED: August 21, 2026

BY THE COURT:

Nina Y. Wang
United States District Judge