IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-03104-NYW-KAS

ANDUIN LIGHTNER, individually and on behalf of all others similarly situated,

Plaintiff,

v.

DAVITA, INC.,

Defendant.

---

**MINUTE ORDER**

---

**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

This matter is before the Court on Plaintiff's **Motion to Restrict Access** [#110] ("Motion"). Defendant filed a Response [#112] in opposition, and Plaintiff filed a Reply [#119]. In accordance with D.C.COLO.LCivR 7.2(d), the Motion was publicly posted to allow for any objections to the sealing of the documents. No timely objections were filed. For the following reasons, the Motion [#110] is **denied**.

Plaintiff asks the Court to maintain the Level 1 restricted filing status of Exhibit C [#105-1] to Defendant's Motion to Strike because "Plaintiff previously designated [the documents in that exhibit] as Confidential under the Protective Order entered in this matter." *Motion* [#110] at 1. Plaintiff further states that "[t]he documents contain confidential trade secrets, proprietary information and court records that have been sealed by another federal judge." *Id*.

## I. Legal Standard

"[S]ecret court proceedings are anathema to a free society." *M.M. v. Zavaras*, 939 F. Supp. 799, 801 (D. Colo. 1996). Under D.C.COLO.LCivR 7.2(a), "[u]nless restricted by statute, rule of civil procedure, or court order, the public *shall* have access to all documents filed with the court[.]" (emphasis added). This means that the mere "fact that the parties agree to restriction or that there is a Stipulated Protective Order in place does not dictate the Court's decision or change its analysis, as the right of access belongs to the public, which is not a party to the parties' agreement or protective order." *E.E.O.C. v. Columbine Health Sys., Inc.*, No. 15-cv-01597-MSK-CBS, 2017 WL 4163354, at *12 (D. Colo. Sept. 19, 2017). "Thus, simply because a document is marked as 'Confidential' and/or 'Subject to Protective Order' does not mean that the Court must keep the document restricted." *Peterson v. Pickering*, No. 22-cv-00320-WJM-KLM, 2023 WL 4487674, at *1 (D. Colo. July 11, 2023).

Documents filed in this District are presumptively available to the public, "but they may be sealed when the public's right of access is outweighed by interests which favor nondisclosure." *Gen. Steel Domestic Sales, LLC v. Chumley*, 129 F. Supp. 3d 1158 (D. Colo. 2015) (citing *United States v. McVeigh*, 119 F.3d 806, 811 (10th Cir. 1997)). "Where no reason whatsoever is set forth to restrict a document, then the public's right of access automatically outweighs any interests which favor nondisclosure[.]" *Peterson*, 2023 WL 4487674, at *1. Pursuant to the Local Rules: "If a document is filed as a restricted document without an accompanying motion to restrict, it shall retain the restriction selected by the filer for 14 days. If no motion to restrict is filed within such time period, the restriction *shall* expire and the document *shall* be open to public inspection." D.C.COLO.LCivR 7.2(e) (emphases added). "This nondiscretionary language is mandatory and requires the Court to remove all restriction from documents filed under restriction without an accompanying motion to restrict." *Peterson*, 2023 WL 4487674, at *1.

A party seeking to restrict a document(s) has the burden of filing a motion to restrict (which shall itself be open to public inspection) and of justifying the request by addressing five points:

> (1) identify the document or the proceeding for which restriction is sought; (2) address the interest to be protected and why such interest outweighs the presumption of public access . . . ; (3) identify a clearly defined and serious injury that would result if access is not restricted; (4) explain why no alternative to restriction is practicable or why only restriction will adequately protect the interest in question . . . ; and (5) identify the level of restriction sought.

D.C.COLO.LCivR 7.2(c). Regarding the second point, "the movant shall articulate a real and substantial interest that justifies depriving the public of access to documents that inform[ ] the court's decision-making process." *Preeson v. Parkview Med. Ctr., Inc.*, No. 15-cv-02263-MSK-KMT, 2017 WL 1197298, at *16 (D. Colo. Mar. 30, 2017)).

Under D.C.COLO.LCivR 7.2(d), the public is given notice when a motion to restrict is filed and given time to object to the requested restriction: "Notice of the filing of such motion shall be posted on the court's website on the court business day following the filing of the motion. Any person may file an objection to the motion to restrict no later than three court business days after posting." This means that, "as required by Local Rule 7.2(c), it is imperative that a motion to restrict documents clearly identify which document(s) the party who filed the motion is seeking to have restricted in order to give the public adequate notice pursuant to the Local Rule." *Peterson*, 2023 WL 4487674, at *2. "Motions which fail to give the public adequate notice of which document(s) is at issue must therefore be denied." *Id.*

## II. Analysis

Exhibit C consists of various documents totaling 77 pages, comprising of seven components.

*Initial Application* (LIGHTNER 0262-0273)

The Initial Application consists of an application Plaintiff's counsel sent to the State Bar of Texas for review of the law firm's advertising and solicitations to potential claimants in Fair Labor Standards Act lawsuits. The application contains various questions about the nature of the advertisements or solicitations, the intended geographic reach, method of transmission, as well as counsel's answers to those questions. Plaintiff produced these pages in discovery (pursuant to a court order) and designated them "Confidential."

Plaintiff claims that these pages consist of "confidential communication between Plaintiff's counsel and the State Bar of Texas advertising review committee[.]" *Motion* [#110] at 2. However, Plaintiff does not explain the interest to be protected by redacting these pages and why such interest outweighs the presumption of public access. Plaintiff also does not identify a clearly defined and serious injury that would result if access is not restricted. Instead, Plaintiff seems to argue that these pages should be redacted because they are not relevant. *See Reply* [#119] at 5 (arguing that "DaVita leans on discovery rulings to argue documents are 'relevant,' as if relevance in discovery decides public access.")

Accordingly, LIGHTNER 0262-0273 should be filed without restriction.

*Email Solicitations Submitted for State Bar of Texas Review* (LIGHTNER 0274-0285)

Plaintiff claims that these email solicitations "contain trade secrets and proprietary business content including custom creative artwork, campaign structure for counsel's outreach to potential opt-ins, advertisement emails, [and] messaging copy, tailored screening questions, attorney-client fee agreement, consent forms, potential client lists and sealed court documents[.]" *Motion* [#110] at 3. Plaintiff argues that "[t]hese materials would provide competitors with a ready-made roadmap to replicate or undercut counsels' campaigns." *Id*.

In response, Defendant argues that the "messaging copy" in the email solicitations transmitted for approval by the State Bar of Texas "were either included in the publicly-available emails at issue, or linked in them and located on publicly-available webpages, and therefore do not qualify to be sealed." *Response* [#112] at 5. Defendant further argues that these emails "are also substantively the same emails Plaintiff's counsel sent out to hundreds of individuals with whom they had no relationship[.]" *Id*. at 4 n.1. Most significantly, Defendant notes that these solicitation emails were already included in exhibits that were publicly filed on the docket in this case. *Id*. at 2.

The Defending Trade Secrets Act defines trade secret broadly to include "all forms and types of financial, business, scientific, technical, economic, or engineering information," regardless of how stored or memorialized. 18 U.S.C. § 1839(3). **The owner of the trade secret must have taken reasonable measures to ensure the information's secrecy**, and the information must derive independent economic value from not being generally known or readily ascertainable through proper means. *See* 18 U.S.C. § 1839(3)(A) & (B) (emphasis added).

Whether or not these emails are trade secrets, Plaintiff has not taken reasonable measures to ensure the information's secrecy. Most significantly, seemingly identical emails were publicly filed on the docket as Exhibit D to Defendant's Motion to Strike All Consent-to-Join Forms, *see* [#104-4]. For example, the Court can discern no meaningful difference between the copy depicted in Lightner 0274-0285, filed under restriction on the docket at [#105-1] at 14-25, and the copy depicted in Lightner 0218-0229, *publicly filed* on the docket at [#104-4] at 2-13.

Accordingly, LIGHTNER 0274-0285 should be filed without restriction.

*Links in Email Solicitations Submitted for State Bar of Texas Review* (LIGHTNER 0286-0295)

This set of documents reveals the content of information seen by readers of the aforementioned email solicitations when they click on links embedded in those emails.

At the outset, the Court notes that section header, "Links in Emails," *see* Doc. #105-1 at 26, should be filed without restriction.

The next page reveals a page on the website of Plaintiff's counsel's law firm (LIGHTNER 0274) [#105-1] at 27. Plaintiff concedes that this page should not be restricted. *See Motion* [#110] at 9.

Accordingly, LIGHTNER 0274 should be filed without restriction.

The next page consists of a form Attorney/Professional Services Agreement, which readers of the email solicitations are invited to sign if they wish Plaintiff's law firm to represent them in the wage litigation against Davita (LIGHTNER 0288) [#105-1] at 28. Plaintiff argues that public disclosure of this Agreement would enable competitors to "undercut counsels' [solicitation] campaigns" and maintains that the Agreement is confidential. *Motion* [#110] at 3; *Reply* [#119] at 7. Defendants counter that the fee agreement was hosted on a "live, publicly-available webpage" that "hundreds" of solicitation email recipients could access via the email links. *Response* [#112] at 5.

While disclosure of fee contracts has the potential for revealing confidential information, information such as the general nature of services performed, the matter for which services were performed, and the fee amount is generally not privileged. *Roe v. Cath. Health Initiatives Colo.*, 281 F.R.D. 632, 636 (D. Colo. 2012) (citing *United States*

*v. Hodgson*, 492 F.2d 1175, 1177 (10th Cir. 1974); *In re Grand Jury Subpoenas*, 906 F.2d 1485, 1492 (10th Cir. 1990)) (other citations omitted).

Based on the Court's review, the Attorney/Professional Services Agreement does not contain information that qualifies as a trade secret or is otherwise confidential. The Agreement is a standard contingency agreement, which identifies the general nature of services to be performed and generically identifies the matter as "your wage claim". The Agreement does not identify the jurisdiction in which the wage claim is pending or will be filed, and it does not identify any specific client; but even if the Agreement provided that information, the Agreement would not be confidential. *See Roe*, 281 F.R.D. at 636. Further, as Defendant points out, this Agreement was accessible by "hundreds" of solicitation email recipients. Though the Agreement itself is stamped "Confidential," nothing in the Agreement informs the recipient that the Agreement cannot be distributed to anyone else. To the extent Plaintiff fears that the Agreement's disclosure might give some other law firm a competitive advantage, nothing in the record demonstrates that a recipient could not (and did not) take the form Agreement to another law firm and seek a better arrangement, such as a lower contingency fee.

Accordingly, LIGHTNER 0288 should be filed without restriction.

The next five pages (LIGHTNER 0289-0293) are a template "DaVita Wage Claim Survey," which recipients of the solicitation emails could complete. The survey asks responders to provide contact information and information about their employment with DaVita, the number of hours they worked, their ability to take meal breaks, and their receipt of pay for meal breaks.

Plaintiff claims that these survey questions "were crafted after spending dozens of hours on legal research to identify the key facts courts weigh heavily when determining whether a medical facility violated wage laws by forcing medical staff to work through their meal breaks without pay." *Motion* [#110] at 4. Plaintiff further asserts that "[t]he questions themselves are the result of an analysis performed by counsel that gives them a competitive advantage for screening many valid claims quickly and accurately," and the questions "represent the key factors counsel has identified to evaluating a strong meal break case." *Id*. Plaintiff fears that the survey's disclosure "would undercut counsels' competitive advantage by allowing competing law firms . . . free access to their internal strategies and methodologies." *Id*.

The Court finds Plaintiff's assertions quite interesting, especially when a very quick internet search using the Google search engine revealed readily available surveys, which contain similar kinds of questions that the DaVita Wage Claim Survey contains. *See* "Potential Client Questionnaire Wage and Overtime Claims," *available at* https://www.fishlawfirm.com/potential-client-questionnaire-wage-and-overtime/ (last visited Sept. 18, 2026); "Employment/Wage & Overtime Claims Questionnaire," *available at* https://www.bwlawgroup.com/questionnaires/employment-wage-overtime-claims-questionnaire/ (last visited Sept. 18, 2026).

The Court need not expend further resources on this issue. Accordingly, LIGHTNER 0289-0293 should be filed without restriction.

The next two pages consist of news articles covering meal break lawsuits. Plaintiff concedes that they should not be restricted. *See Motion* [#110] at 9. Accordingly, LIGHTNER 0294-0295 should be filed without restriction.

<u>*Materials Exchanged with the Texas State Bar Advertising Review Committee*</u> (LIGHTNER 0296-0311)

The next 16 pages contain the Texas State Bar's response to Plaintiff's attorneys' request for an advertising review.

At the outset, the Court notes that LIGHTNER 0296 and LIGHTNER 0299 should be filed without restriction because they are simply cover pages to the Texas State Bar documents.

LIGHTNER 0297-0298 consists of the Advertising Review Committee's response, which identifies potential violations Part 7 of the Texas Disciplinary Rules of Professional Conduct and requests additional information to substantiate the representations in Plaintiff's counsel's submitted advertisements which were already "being disseminated to the public." LIGHTNER 0297. LIGHTNER 0298 expressly identifies the representations that the Committee flagged as needing additional substantiation.

LIGHTNER 0300-0311 contain the materials that Plaintiff's counsel resubmitted to the Texas State Bar's Advertising Review Committee.

Plaintiff argues that disclosure of these materials "would provide competitors with a ready-made roadmap to replicate or undercut counsels' campaigns." *Motion* [#110] at 3. The Court has already rejected this argument.

Plaintiff further argues that her attorneys intended these documents "to be viewed in confidence by the State Bar and the intended recipients, namely the potential plaintiffs." *Id*. at 5. Plaintiff then cites four cases involving "similar facts" in which "federal courts have granted motions to restrict confidential documents." *Id*. All four cases, however, are distinguishable. None concern "similar facts". None concern advertising materials submitted to a state bar for an ethics review.

*Palempalli ex rel. Cognizant Tech. Sols. Corp. v. Patsalos-Fox*, No. 2:21-cv-12025-KM-CLW, 2023 WL 3260396 (D.N.J. May 4, 2023) concerned confidential materials and information contained in court filings and in a hearing transcript. Specifically, those materials included confidential, proprietary, or commercially sensitive information regarding the potential appointment of a committee to investigate the plaintiff's litigation demands and the board's discussion of those demands. That is not the situation here.

*Stegmann ex rel. Covetrus, Inc. v. Wolin*, No. 21-CV-1717 (GRB), 2021 WL 1838219 (E.D.N.Y. May 7, 2021) concerned court filings that contained confidential and proprietary information obtained from a nominal defendant's corporate books and files. That is not the situation here.

*Sumotext Corp. v. Zoove, Inc.*, No. 16-CV-01370-BLF, 2017 WL 8294292 (N.D. Cal. Aug. 15, 2017) concerned court flings that contained the corporate defendant's confidential financial information and corporate emails containing sensitive corporate information. That is not the situation here.

And, finally, *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, No. MDL 2672 CRB (JSC), 2016 WL 11807130 (N.D. Cal. Aug. 24, 2016) concerned whether certain nonparty employees' names, job titles, and other identifying information should be restricted from public disclosure to protect those individuals' privacy rights. That is not the situation here.

Because Plaintiff has provided neither persuasive, applicable authority nor a compelling reason, LIGHTNER 0300-0311 should be filed without restriction.

*<u>Restricted Filings in Southern District of Texas Case</u>* (LIGHTNER 0312-321)

The next 10 pages consist of court filings related to Southern District of Texas case number 4:13-cv-03375.

Plaintiff concedes that the electronic notification concerning a Southern District of Texas court filing should not be restricted. *See Reply* [#119] at 8. Accordingly, LIGHTNER 0314 should be filed without restriction.

LIGHTNER 0315-0321 consists of the first seven pages of a Joint Motion for Final Approval of Rule 23 Class Action Settlement that was filed in 4:13-cv-03375 (S.D. Tex.). All the parties' names are redacted. Defendant argues that "the redactions imposed, together with the fact that some of the pages of the motion were not included with Plaintiff's production . . . means that any sensitive information has likely already been protected from public view." *Response* [#112] at 6. The Court agrees. Accordingly, LIGHTNER 0315-0321 should be filed without restriction.

<u>*Texas State Bar Approval Letter* (LIGHTNER 0322-0325)</u>

At the outset, the Court notes that LIGHTNER 00322 is a cover page and, therefore, should be filed without restriction.

LIGHTNER 00323-0325 is the Texas State Bar Advertising Review Committee's Notice of Approval, which concludes that Plaintiff's counsel's resubmitted advertising materials comply with the Texas Disciplinary Rules of Professional Conduct that govern attorney advertising. The undersigned quoted from the Notice of Approval when addressing Plaintiff's counsel's lack of candor with the court when counsel represented

that the Advertising Review Committee reviewed every advertising communication "with a fine-tooth comb" and concluded that the statements did not contain misleading statements of fact or law or any kind of unreasonable promise or expectation that a particular result was guaranteed or likely. *See Recommendation* [#134] at 19-20. The undersigned further concluded that "[Plaintiff's counsel's] representation that the [Advertising Review] Committee reviewed the advertisements with a 'fine-tooth comb' is inaccurate and misleading and violates the Standards of Professional Conduct, D.C.COLO.LAttyR 2, and Colorado Rule of Professional Conduct 3.3." *Id*. at 21. The Court further warned Plaintiff's counsel "that any further misrepresentations will likely result in sanctions, referral to the Committee on Conduct, or both." *Id*.

While the undersigned's admonishment of Plaintiff's counsel may not be material to the resolution of Plaintiff's claims, "[t]he public has a fundamental interest in understanding the disputes presented to and decided by the courts, so at to assure that they are run fairly and that judges act honestly." *Huddleson v. City of Pueblo*, 270 F.R.D. 635, 636 (D. Colo. 2010) (citing *Crystal Grower's Corp. v. Dobbins*, 616 F.2d 458, 461 (10th Cir. 1980)). Here, the public has a fundamental interest in understanding why the Court has questioned Plaintiff's counsel's candor.

Because Plaintiff has provided neither persuasive, applicable authority nor a compelling reason, LIGHTNER 00323-0325 should be filed without restriction.

*Final Approved Emails* (LIGHTNER 0326-0338)

At the outset, the Court notes that LIGHTNER 00326 is a cover page and, therefore, should be filed without restriction.

LIGHTNER 00327-0338 are the final State Bar-approved emails that Plaintiff's counsel disseminated to hundreds of prospective plaintiffs. These emails should be filed without restriction for the same reasons that the emails at LIGHTNER 0274-0285 should be filed without restriction. Accordingly, for the foregoing reasons,

IT IS HEREBY **ORDERED** that Plaintiff's Motion to Restrict Access [#110] is **DENIED**.

IT IS FURTHER **ORDERED** that Exhibit C [#105-1] to Defendant's Motion to Strike should be **unrestricted** and the Clerk of Court shall lift the Level 1 restriction.

Dated: September 20, 2026